JOHN GALLIGAN *et al.*, Plaintiffs-Appellees, v. THE HONORABLE HAROLD WASHINGTON, Mayor of the City of Chicago, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 86—3557

Opinion filed November 25, 1987.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellants.

A. Leo Weil IV, of Edward L. Schuller & Associates, of Chicago, for appellee Joseph Miedzianowski.

Law Offices of Joseph V. Roddy, of Chicago, for appellee John Galligan.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendants, Harold Washington, Mayor of Chicago; the city of Chicago; and Fred Rice, David Fogel, James Rosas, Carol Czarnecki, and Carole Brawner of the Chicago police department, appeal from an order of the trial court granting plaintiffs John Galligan and Joseph Miedzianowski post-judgment relief pursuant to section 2—1401 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) After finding a mutual mistake of fact, the trial court modified an agreed order entered the previous year. The court modified the portion of the order showing a dismissal of a claim for damages with prejudice to indicate a dismissal without prejudice. The portion of the order indicating a dismissal with prejudice as to an equitable action remained unchanged. The sole issue on review is whether the trial court erred in granting plaintiffs relief under section 2—1401.

On August 3, 1984, the police board of the city of Chicago charged plaintiffs, both police officers, with several violations of the rules of the police department. Effective August 4, 1984, plaintiffs were suspended for 30 days.

On August 9, 1984, plaintiffs filed suit against defendants, alleging that they had been wrongfully suspended without a proper hearing. The complaint was entitled "Verified Complaint in Chancery for Injunction and Other Relief." Plaintiffs sought the following relief:

"A. For Temporary Restraining Order and a Preliminary Injunction to be Issued without bond, providing that:

I. The defendants herein and all of those persons acting in concern with them are enjoined and restrained from terminating or suspending the plaintiffs' employment with the Chicago Police Department without providing the opportunity for a full and fair hearing before the Chicago Police Board concerning the charges of Mr. Morales and Mr. Khoshaba.

II. For an award of compensatory and punitive damages for the violations of plaintiffs' Constitutional rights, as set forth herein.

III. For such other and further relief as this Honorable Court may deem just and proper, together with the costs and disbursements of this suit."

On August 24, 1984, defendants filed a motion to strike and dismiss the complaint. Defendants argued that plaintiffs had not yet exhausted their administrative remedies before the police board; that

they had not suffered irreparable harm; that certain defendants were improperly named as parties; that defendants were immune from liability in damages pursuant to section 2—208 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 2—208); and that the complaint failed to state a cause of action.

Defendants' memorandum in support of the motion to strike and dismiss argued that "the value of lost earnings and fringe benefits is clearly ascertainable in monetary terms. Should there have occurred a wrongful discharge or suspension, plaintiff is possessed of an adequate remedy at law for the collection of same, and is not properly entitled to injunctive relief. [*G. H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 305 N.E.2d 317.] The instant action is therefore both premature and properly subject to dismissal." The memorandum later argued that "defendants here are immune from liability in damages."

On August 30, 1984, the trial court granted plaintiffs' motion to initiate discovery and subsequently granted several motions for additional discovery. A final status hearing was set for January 25, 1985.

In late January 1985, the parties' lawyers discussed a voluntary dismissal. Thomas Draths represented plaintiffs. Assistant corporation counsel Robert Karmgard and James Convery represented defendants. After Draths and Karmgard spoke on the telephone on January 24, 1985, plaintiffs' counsel drafted a stipulated order and presented it to the court. Defendants' counsel did not appear. On January 25, 1985, the court entered the agreed order, which stated that, "It is hereby ordered that this cause is dismissed with prejudice." Plaintiffs subsequently prevailed in their case before the police board and were reinstated with back pay.

In June 1986, plaintiffs filed damages actions against defendants. On July 31, 1986, defendants moved to dismiss the new suits on the ground of *res judicata*, citing the dismissal with prejudice of the earlier suit.

On September 5, 1986, plaintiffs, represented now by separate counsel, filed section 2—1401 petitions to modify the agreed order of January 25, 1985, alleging that there had been a mutual mistake and that the parties had not intended to bar a future damages action. Miedzianowski also asserted that his prior counsel had never been authorized to seek money damages on his behalf.

The petitions state that the parties' counsel treated the case as a purely equitable action for injunctive relief. Galligan's petition states: "Notwithstanding the cursory prayer for damages in the complaint,

(which was addressed in only cursory fashion by the City in its motion to dismiss), the complaint was never intended to and did not in any substantial respect state a cause of action for damages." Miedzianowski's petition was substantially similar. The petitions, and defendants' motion to strike them, were supported by affidavits of the parties' attorneys.

Draths' affidavits on behalf of plaintiffs state that on numerous occasions before and after January 15, 1985, he discussed plaintiffs' intention to bring a damages action at law with either Karmgard, Convery or Darka Papushkewych, chief assistant corporation counsel. On January 24, 1985, Draths spoke to Karmgard on the telephone regarding the cause, and both attorneys discussed the case as if it were purely an equitable action. "Mr. Karmgard said he wanted it dismissed with prejudice because he was getting bombarded with injunction suits by our office and other attorneys. I mentioned the fact of the future damage claim during this conversation with Mr. Karmgard and his response were [sic] words to the effect that 'I don't think you guys can state a damage claim if you get back pay.' "

At the status call held the following day, Draths thanked the trial court for the extensive discovery it had permitted. Judge Hechinger said they probably should have brought a bill in discovery, since that was the real nature of the action, and that is why he allowed the discovery. Draths told the judge he was filing a subsequent action for damages and the judge responded that the order of dismissal with prejudice would not affect that.

Draths' affidavit stated further that on December 16, 1985, Papushkewych met with plaintiffs' counsel, Joseph V. Roddy and Draths, to discuss plaintiffs' plans to sue for damages and the possibility of settlement. Papushkewych inquired about the status of the earlier chancery action and was told that it was no longer pending. Papushkewych told them to file their damages complaint and then she would discuss the possibility of a settlement offer with her superiors. Draths stated further that during Convery's investigation of the damages action on behalf of defendants in January 1986, he and Convery had nothing more than a few informal conversations about the action.

Draths' supplemental affidavit also stated that on January 19, 1986, he received a telephone call from Convery, who stated substantially the following:

> " 'Jim Montgomery wants to meet with you and Joe Roddy to discuss the damages aspect of Galligan and Miedzianowski. You guys should have your points and authorities ready regarding the facts you feel are damaging to the City. You know what I

mean by points and authorities, show Montgomery where the skeletons are hidden, how "the boys" got jacked around. Also, Montgomery wants to know your monetary position.' "

The meeting did not occur because of various scheduling conflicts. Draths stated further that on January 28, 1986, Convery telephoned Draths, again indicating that corporation counsel Montgomery wanted to meet with plaintiffs' counsel. Convery "clearly indicated that although the law might not be totally favorable to us, that he was personally sympathetic to the boys' cause." Draths also stated that in the earlier action, Karmgard and Convery "were interchangeable; they were both inexorably involved. What one knew, they both knew."

Karmgard's affidavit in support of defendants' motion to strike and dismiss the section 2—1401 petitions states that he was the principal attorney for defendants during the earlier case in chancery. He treated the case as an action for an injunction and for compensatory and punitive damages. On January 24, 1985, he spoke with Draths, and told Draths, "I wanted to get rid of the case so I could get it off my docket, or words to that effect." The matter of plaintiffs' damages claim appeared in both the complaint and the motion to strike and dismiss. Karmgard recalled no "specific discussion regarding the survival" of any part of the action. "At some time prior to that conversation, however, I recall that I had spoken to one or more of plaintiffs' counsel regarding the Motion to Strike and Dismiss and stating my opinion of the doubtfulness of the validity of plaintiffs' damage claim. When discussing the dismissal of this case, it was my recollection that this would dispose of the entire case, as I recall no discussion regarding partial survival of any portion of the cause."

The affidavit of Papushkewych states that she had no contact with the litigation before July 1985, and that until June 1986 she had no knowledge that the action had been dismissed with prejudice in January 1985. In December 1985, Roddy and Draths contacted her, requesting a meeting regarding a possible damages lawsuit. It was Papushkewych's custom to meet with attorneys who were considering filing a lawsuit against the City. On December 16, 1985, she met with Roddy and Draths. She later met with Convery and assigned him to investigate the matter. He finished his investigation in January 1986, and Papushkewych later recommended to her superiors, based on Convery's findings, that there was no basis for any settlement offer.

Convery states in his affidavit that he was an attorney of record in the earlier case, but was not the principal attorney. "I was not involved in any manner in the negotiations of the terms of the dismissal of the action with prejudice, and I don't recall whether I ever knew

that the action was dismissed with prejudice at the time of the dismissal. I did learn of this fact in June 1986." During his investigation in December 1985 and January 1986, Convery met with Draths in order to get further details from him. "At no time during these meetings and my investigation was I made aware from Mr. Draths or elsewhere that this action had been dismissed with prejudice."

When the petitions for post-judgment relief came up before Judge David Shields, he transferred them to Judge Hechinger, who originally entered the January 1985 agreed order dismissing the action with prejudice. Because of his upcoming retirement, Judge Hechinger did not hear the petitions, which were transferred back to Judge Shields. On November 25, 1986, after hearing arguments, Judge Shields entered an order granting plaintiffs' petitions for post-judgment relief. The court found that the affidavits and writings submitted demonstrated that a mutual mistake of fact had occurred. The court added that, even if it had not found a mutual mistake of fact, it believed that equity required an order modifying the January 25, 1986, order to indicate a dismissal with prejudice as to the equitable count and a dismissal without prejudice to any pending claim for damages.

■ Section 2—1401 of the Code of Civil Procedure provides a statutory procedure by which judgments may be vacated after 30 days from the entry thereof. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) Petitioner must affirmatively set forth specific factual allegations supporting the existence of a meritorious defense or claim in the original action and due diligence on the part of the petitioner. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381.) The necessary quantum of proof is a preponderance of the evidence. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381.) Whether the petition should be granted is within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381, citing *Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 404 N.E.2d 554.

■ Defendants contend that the trial court decision is "entitled to less deference than would ordinarily be the case" because the original trial judge did not hear the section 2—1401 petition. (See, *e.g.*, *Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 454 N.E.2d 806.) It is not mandatory, however, in every case that the trial judge preside over the post-judgment hearing for relief. (See *People v. Hilliard* (1978), 65 Ill. App. 3d 642, 382 N.E.2d 441.) Moreover, the original trial judge had retired from the bench at the time relief was granted. Prior

to that, plaintiffs made every possible effort to have the original judge hear the petition, but he refused to hear it and transferred it back for reassignment. We are aware of no rule, nor have defendants cited one, requiring this court to give less deference to the circuit court's granting of the post-judgment relief under these circumstances. We find defendants' assertion that a different trial judge's judgment is "plainly less reliable" to be unpersuasive.

▋ Defendants maintain that plaintiffs have failed to show mutual mistake or other grounds for relief under section 2—1401. A mutual mistake of fact which was unknown to the court at the time of judgment and which would have prevented the entry of such judgment is a proper ground for relief under section 2—1401. *Groak v. Groak* (1965), 64 Ill. App. 2d 439, 212 N.E.2d 139; *Frederick v. Maggio* (1959), 23 Ill. App. 2d 292, 162 N.E.2d 590.

Draths' affidavits clearly state that on several occasions before and after January 25, 1985, he discussed with defendants' attorneys plaintiffs' intention to bring a future damages action. For example, on January 24, 1985, he spoke with Karmgard regarding the dismissal with prejudice of the action in chancery. Draths states that Karmgard wanted it dismissed with prejudice because he was being bombarded with injunction suits. In addition, Karmgard told Draths he did not think a damages claim would be successful. Draths also states that he informed the trial court on January 25, 1985, of the future damages claims, and the court remarked that the dismissal would not affect that claim.

In response to Draths' affidavit, Karmgard's affidavit merely states that he spoke with Draths on January 24, 1985, but he did not recall discussing the survival of a damages claim. He agreed that he expressed doubt as to the validity of such a claim. He was not present in court when Draths appeared before the trial judge on January 25, 1985.

▋ Clearly, Karmgard's affidavit does not conflict with Draths' affidavits. Defendants' affidavits do not refute the specific, detailed facts presented by Draths. Moreover, defendants did not request an evidentiary hearing in connection with the section 2—1401 petitions to explore the accuracy of the facts. In determining whether the trial court properly granted post-judgment relief, all well-pleaded and uncontradicted facts in plaintiffs' petition and accompanying affidavits will be treated as true. (*LaMotte v. Constantine* (1980), 92 Ill. App. 3d 216, 416 N.E.2d 23; *Norvell v. Howard* (1979), 72 Ill. App. 3d 698, 391 N.E.2d 101.) Thus, we must treat as true the uncontradicted facts in Draths' affidavits which permit the inference that both parties'

counsel treated the dismissal as only involving the equitable action.

■ In addition, the conduct of both parties' counsel subsequent to the entry of the order of dismissal with prejudice clearly indicated they believed the equitable action had been dismissed with prejudice while the possibility of a damages action remained. For example, Papushkewych states in her affidavit that on December 16, 1985, she met with plaintiffs' counsel to discuss the possible damages suit. Draths states that at the meeting Papushkewych was told that the equitable action had been dismissed. After Convery investigated the potential suit for a month, in January 1986 Papushkewych recommended that there was no basis for a settlement offer. Convery's affidavit states only that, despite the fact that he was an attorney of record in the earlier action, he could not recall whether prior to June 1986 he knew the action had been dismissed with prejudice.

Furthermore, Draths' supplemental affidavit states that on January 19, 1986, Convery informed him that the corporation counsel wished to meet with plaintiffs' counsel to discuss the damages aspect of plaintiffs' case, and that plaintiffs' counsel should inform the corporation counsel of their monetary position. Moreover, on January 28, 1986, Convery telephoned again, stating that the corporation counsel wanted to meet with plaintiffs' counsel and that, while the law was not totally favorable to plaintiffs, Convery was personally sympathetic to plaintiffs' cause.

We are not persuaded by defendants' argument that even if Karmgard knew of these discussions and did not advise Convery or Papushkewych of the dismissal with prejudice, it does not prove mutual mistake because "Karmgard, like many litigators, has a heavy caseload." Notably, defendants support this argument by quoting Draths' statement that Karmgard reported being "bombarded" with suits "of this nature." Furthermore, defendants' argument that they intended the dismissal with prejudice to include a damages claim is undermined by their argument that "defendants had no duty to discover the dismissal and report it to plaintiffs."

The evidence overwhelmingly supports the trial court's decision to grant plaintiffs' section 2—1401 petition, even under the clear and convincing evidence standard cited by defendants. (See, *e.g.*, *319 South La Salle Corporation v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288 (regarding standard of proof for reformation of a written agreement).) Having found no abuse of the trial court's discretion, we will not disturb its judgment.

■■ We recognize the general principle cited by defendants that a party should not receive post-judgment relief from his own or his

attorney's mistakes or negligence. (*Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 454 N.E.2d 806.) Plaintiffs' counsel obviously focused only on the equitable action, and apparently forgot that the standard, boilerplate language for monetary damages was included in the prayer of the complaint filed in chancery. A section 2—1401 petition, however, is equitable in nature. It invokes the equitable powers of the court, which may prevent the enforcement of a judgment when it would be unfair, unjust or unconscionable. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381; *Ellman v. DeRuiter* (1952), 412 Ill. 285, 106 N.E.2d 350.) It is proper to consider all of the circumstances surrounding the entry of the original judgment, including the conduct of the litigants and their attorneys. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381.) The repeated responses to plaintiffs' consideration of a future damages suit demands, in all fairness, that plaintiffs be permitted to pursue that action. Counsel for defendants' willingness to continue discussions, negotiations and investigation concerning the potential damages claim supports our judgment. The entire proceedings in the earlier case in chancery included nothing more than a motion to strike and dismiss, and the taking of four discovery depositions. No evidentiary hearing of any kind was held as to any issue. The trial court correctly characterized the action as a bill in discovery which related to the police board proceedings.

Defendants contend further that plaintiffs failed to show due diligence because the section 2—1401 petition was filed 19 months after the agreed order of dismissal was filed. The motion was filed within the two-year limitation imposed by the statute. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) In addition, the determination as to whether the due diligence requirement has been satisfied permits an inquiry into the surrounding circumstances and includes consideration as to the furtherance of justice. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381; *McDonald v. Checker Taxi Co.* (1976), 44 Ill. App. 3d 345, 358 N.E.2d 95.) On June 30, 1986, plaintiffs filed suit for damages. On July 31, 1986, defendants moved to dismiss the new suit, citing the earlier agreed order of dismissal. On September 5, 1986, plaintiffs filed the petition for post-judgment relief. Thus, plaintiffs filed for post-judgment relief within 38 days of the filing of defendants' motion to dismiss, when they first learned of the mutual mistake. (See *Chase v. Cunningham*, (1978), 64 Ill. App. 3d 54, 381 N.E.2d 27.) Our finding is not altered by defendants' argument before this court that even 38 days is an excessive amount of time.

Defendants also contend that plaintiffs failed to state a meri-

torious claim. In the original complaint, plaintiffs' allegations involved due process and equal protection violations as a result of defendants' initiating disciplinary proceedings which were motivated by political and racial reasons. The disciplinary proceedings involved the arrest of a Hispanic community leader. Without repeating the complicated factual details underlying that action, we agree with the trial court's conclusion that the allegations are sufficient to state a meritorious cause of action. Defendants argue that the cause of action will be dismissed when they file a section 2—619 motion, but that question is not at issue here. Moreover, any immunity which might be relied upon is qualified and may be destroyed by a showing of malice or a lack of reasonable belief on the part of defendants. (See Ill. Rev. Stat. 1985, ch. 85, par. 2—208.) We also note that the law and chancery cases arise out of the same facts. Thus, while the pleadings in the new case are not before us, we are aware of the factual circumstances underlying both cases. Moreover, the allegations sufficiently allege the failure of defendants to provide plaintiffs with adequate notice and opportunity to be heard before they were suspended. Plaintiffs also adequately state a liberty interest deprivation for purposes of the issue before us in this appeal.

For these reasons, the judgment of the circuit court of Cook County granting plaintiffs' petition for post-judgment relief is affirmed.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.