THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellant, v. EDWARD ROSS, Petitioner-Appellee.

First District (2nd Division) No. 1—88—1902

Opinion filed December 5, 1989.—Rehearing denied January 16, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

Jenner & Block and Howard Reich, both of Chicago (Thomas P. Sullivan and Robert W. Kent, Jr., of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial in 1983, petitioner-appellee Edward Ross was convicted of murder and sentenced to a term of 30 years' imprisonment. This court affirmed Ross' conviction (*People v. Ross* (1985), 132 Ill. App. 3d 498, 477 N.E.2d 1258); the Illinois Supreme Court denied leave to appeal; and the United States Supreme Court denied *certiorari*. In October 1987, Ross filed a nine-count petition in the trial court for post-conviction relief. Following an evidentiary hearing, the trial court dismissed all but two counts and granted a new trial on count IV pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401), based on newly discovered evidence. Because of its ruling on count IV, the trial court indicated that it was not necessary to consider count VI, which sought a new trial under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), based on "extraordinary circumstances."

The State raises as issues on this appeal (1) whether, because the petition was filed four years after trial and Ross presented no evidence of fraudulent concealment by the State, the petition for relief under section 2—1401 of the Code of Civil Procedure is barred by the two-year limitations period in the statute, even though the State failed to raise this defense in writing before bringing this appeal; and (2) whether a new trial was properly granted pursuant to section 2—1401 based on "newly discovered" evidence that blood was found inside the barrel of the gun with which Mrs. Ross was shot. We reverse, holding that the petition was not barred by the two-year limitations period, but that the trial court abused its discretion in granting a new trial based on newly discovered evidence.

On November 4, 1981, four shots from Ross' gun were fired in Ross' bedroom. Ross was shot once in the right leg and Betty Ross, Ross' ex-wife, was killed by a single contact gunshot to the left temple. At trial, on direct appeal, and in post-conviction proceedings, Ross maintained that Mrs. Ross first shot him in the leg and then committed suicide. The State maintained that Ross shot Mrs. Ross and then shot himself in the leg to inflict a "cover wound." The trial court concluded, and the appellate court agreed, that the circumstantial evidence presented at trial established that Ross was guilty of murder and was inconsistent with Ross' suicide theory. Briefly, that evidence included Ross' experience with guns; the inconsistency between the location of the spent bullets and Ross' contention that Mrs. Ross fired "hesitation shots"; the wound on the left side of Mrs. Ross' head and Mrs. Ross' right-handedness and disabled left hand; Mrs. Ross' fear of guns; incriminating statements Ross made to Mrs. Ross' former husband; the lack of fingerprints on the gun; and characteristics of Ross' leg wound consistent with self-infliction. Details are recounted in this court's decision affirming defendant's conviction and will not be repeated here. See *People v. Ross* (1985), 132 Ill. App. 3d 498, 477 N.E.2d 1258.

The evidence adduced at trial particularly relevant to this appeal consists of People's exhibit 36, containing a cotton swab used to test Ross' gun for the presence of blood, and the testimony of Daniel Quealy and Michael Podlecki, who examined the gun for traces of blood. Quealy, an evidence technician, testified that Ross' .32 caliber revolver was found on the floor of Ross' bedroom near Mrs. Ross. Quealy examined the gun at the scene and found blood on both sides of the gun's "frame," but none on the barrel. He also examined the interior of the barrel and did not see any blood.

Quealy examined the gun a second time on the same date at the

crime lab in Maywood. Regarding that examination, Quealy testified:

"Q. And what procedure did you follow with regard to the barrel of the gun when you were at the criminalistic lab?

A. After a second visual examination, I swabbed the length of the barrel.

Q. What did you use to swab the length of the barrel, Mr. Quealy?

A. I used a cotton swab.

Q. After using the swab, did you inspect that swab?

A. Yes.

Q. And upon inspecting that swab, did you notice any type of stain or discoloration upon the swab?

A. Yes.

Q. Now, Officer Quealy, I will ask you to look at what I will mark as People's Exhibit No. 36 for identification[.]

* * *

Officer, would you examine People's Exhibit 36 and its contents, please? Are you able to identify People's Exhibit 36 and its contents?

A. Yes. This is the swab that was taken from the weapon found in the bedroom."

On redirect examination Quealy testified:

"Q. In the course of the time in which you had custody of this weapon on November 4, 1981, did you ever observe any red or blood-like substance on the exterior barrel, on the interior of the barrel?

A. No.

Q. When you swabbed the barrel of that gun and you testified that there was a result, what did you recover from the inside of the gun?

A. It was soot on that swab.

Q. And what type of residue did that leave on your swab, what color?

A. It was blackened soot."

Michael Podlecki, a forensic serologist with the Illinois State Police, then testified that People's exhibit 36 contained a cotton swab that tested positive for the presence of human blood. There was no other testimony at trial regarding the cotton swab. The only other reference to the swab occurred during closing arguments, when the prosecutor argued that no blood was found inside the barrel of the gun. That comment elicited no response from either defense counsel or the trial court.

In post-conviction proceedings, Ross maintained that People's exhibit 36 contained a cotton swab that Quealy used to swab the interior of the barrel and examined only visually, without performing any chemical tests for the presence of blood, and that the same cotton swab was chemically tested by Podlecki with positive results for blood.

Contrary to these assertions, Quealy testified at the post-conviction hearing that People's exhibit 36 contained a dry cotton swab used to collect a blood sample from the exterior of the gun at the scene of the crime. Quealy stated that he visually inspected the inside of the barrel of the gun, saw neither hair, bone, tissue, nor blood, and then swabbed the interior of the barrel with a moistened cotton swab. Quealy saw soot on the swab and then applied a drop of Kastle-Meyer solution, followed by a drop of hydrogen peroxide, to screen the swab chemically for blood. The swab tested negative and was discarded. Quealy documented the procedure in his evidence report with the notation: "R/ETs also swabbed the length of the barrel with negative results for blood and tissue."

On cross-examination, Ross attempted to impeach Quealy's testimony by eliciting admissions that evidence technicians are responsible for collecting and preserving evidence, but as a general procedure, take suspect blood to the State crime lab for testing by serologists, and that the Kastle-Meyer test destroys the sample of fluid for purposes of additional testing, so that the test should not be performed if doing so would destroy the entire sample. Quealy maintained, however, that he was allowed to conduct screening tests for the presence of blood; that he had performed 100 Kastle-Meyer tests; that he learned how to perform the test from State serologist Mohammed Tahir; that he was never told that he should cut the swab and perform the Kastle-Meyer test on only part of the swab if necessary to preserve the sample for further testing; that he did not always refer explicitly to his tests in his evidence reports; and that the notation in his evidence report in this case indicated a negative result for blood based on the Kastle-Meyer test and a negative result for tissue based only on a visual examination. Quealy stated that he could not recall whether he told the trial prosecutors that he had performed a Kastle-Meyer test, but he stated that he told his partner, Steven Frances, that he performed the test with a negative result.

Steven Frances, Quealy's partner assigned to investigate Mrs. Ross' shooting, also testified at the post-conviction hearing. According to Frances, Quealy told him in the crime lab that he was going to do a blood-screen test on some evidence. Frances did not see Quealy per-

form the test, but saw the cotton swab after the test. Frances asserted the swab was white, indicating a negative result, and that generally it takes 10 to 15 minutes for a negative swab to turn the same color pink as a positive swab. On this appeal, Ross points out that before the post-conviction hearing, Frances told defense counsel that Quealy did not perform a Kastle-Meyer test; two days before Frances testified, he discussed Ross' case on the telephone with Quealy; and the following day, Frances told defense counsel that Quealy did perform a Kastle-Meyer test and that he lied before when he stated that Quealy did not perform the test.

Donald DesRemaux, Quealy's supervisor, testified that evidence technicians were prohibited by official policy from testing suspect blood samples and had no discretion regarding the performance of such tests. DesRemaux stated that, to the best of his knowledge, no evidence technician had ever performed a chemical test on suspect blood evidence and no evidence report had ever stated that an evidence technician had conducted such a test on suspect blood. DesRemaux reviewed Quealy's report while on the witness stand and interpreted Quealy's notation to refer only to a visual examination of the cotton swab for both blood and tissue.

Mohammed Tahir, a forensic serologist, testified that he had instructed Quealy personally on how to perform the Kastle-Meyer test and gave him a bottle of the necessary chemical. Tahir explained to Quealy that in cases where the entire fluid sample is on one swab, the proper procedure is to cut the swab and perform the Kastle-Meyer test on only part of the swab. Tahir testified that the Kastle-Meyer reagent turns the swab pink instantaneously if blood is present and, contrary to Frances' testimony, turns the swab the same color pink in about one minute if no blood is present.

Michael Podlecki testified that he was the forensic serologist who performed the blood tests on the evidence recovered at the scene of Mrs. Ross' shooting. He found blood on the swab contained in People's exhibit 36, but nothing in his reports or in the envelope containing the swab enabled him to determine the portion of the gun from which the swab was taken. Podlecki received the gun from ballistics after it had been test fired four times and performed additional tests. He took two swabs from the gun, one from the exterior of the gun and the other from the interior of the barrel, and subjected both swabs to a Kastle-Meyer test. One swab tested positive and the other tested negative. Podlecki could not recall which swab tested positive, but because the gun had been test fired, concluded that the positive swab must have come from the exterior of the gun.

Finally, Herbert MacDonell and Dr. Irving C. Stone both gave expert testimony regarding the significance of blood inside the barrel of the gun. MacDonell concluded that only the contact shot to Mrs. Ross' head could have caused blood to be present inside the barrel of the gun. This is known as the "draw back" effect. MacDonell also concluded that the shot to Mrs. Ross' head must have been the last shot fired because any subsequent shot would have cleaned out the barrel. Dr. Stone testified that, because he had often been asked to testify on the subject and previously could only base his answers on "general knowledge and guessing," he had been collecting data on the presence of blood inside and outside the barrels of suicide weapons since 1985. Dr. Stone tested twelve .32 caliber handguns used to inflict contact wounds to the head. Five of those guns had no blood either inside or outside the barrel, six had blood both inside and outside the barrel, and one had blood on the outside but not inside the barrel. Dr. Stone stated that these results were consistent with his findings for all handguns.

Based on the foregoing evidence, the trial court found that (1) People's exhibit 36 contained the cotton swab that was used to swab the interior of the barrel and was tested by Podlecki with positive results for blood; (2) Quealy's testimony to the contrary was significantly impeached; (3) there was no expert testimony presented at trial regarding the significance of blood inside the barrel of the gun; (4) Dr. Stone gave credible testimony regarding the incidence of blood inside the barrel of suicide weapons, finding the percentage of positive results to be 40% to 45% generally, and 40% to 42% for .32 caliber handguns; (5) the gun in this case was submitted to serologists for blood testing only after it was test fired four times; and (6) the serologist determined that the gun tested positive for blood.

The trial court reviewed these findings in the context of the circumstantial nature of the State's case, Ross' claim that Mrs. Ross committed suicide, and the State's failure to collect and preserve gunshot residue samples from the hands of Ross and Mrs. Ross. The court stated that Ross "demonstrated by a clear preponderance of the evidence" the necessity for expert testimony regarding the significance of the presence or absence of blood in or on the gun and did not waive any issue regarding such testimony, because "the scientific evidence thereto is a relatively recent development" and "is in the nature of newly discovered evidence." The court concluded:

> "The cumulative effect of all of the above mentioned factors raises Petitioner's allegations, and the referred-to evidence in support thereof, to the level of extraordinary circumstances,

and this Court is able to say without reservation, that had such expert testimony and the evidence heard at the post-conviction hearing been presented at trial, there is reasonable likelihood that the outcome of the trial would have been affected."

The court then granted Ross' request for a new trial pursuant to section 2—1401 of the Code of Civil Procedure and the State brought this appeal.

I

The State maintains that the petition, filed four years after Ross was convicted, was barred by the two-year limitations period in section 2—1401. The State argues that the two-year limitations period is jurisdictional, may not be waived, and must be adhered to absent a clear showing that the grounds for relief were fraudulently concealed. We disagree.

■ Generally, if a statute codifies a remedy which existed at common law, a limitations period in the statute is procedural and may be waived. (See, *e.g.*, *Anderson v. Marquette National Bank* (1987), 164 Ill. App. 3d 626, 632-35, 518 N.E.2d 196.) If, on the other hand, the statute creates a new cause of action, the limitations period is jurisdictional and cannot be waived. See, *e.g.*, *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 209-11, 486 N.E.2d 893.

Section 2—1401 codifies the common law remedies of writs of error *coram nobis*, bills of review, and bills in the nature of bills of review, and contains a two-year limitations period for the filing of a petition absent a showing of legal disability, duress, or fraudulent concealment of the ground for relief. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) Under the general principles set forth above, the two-year limitations period may be waived. This conclusion is supported by *Rizzo v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 460, 297 N.E.2d 247, where the court held that the respondents waived the statute of limitations defense by failing to argue the defense on appeal. We have found no cases compelling a contrary result. Some cases refer to the two-year limitations period as "jurisdictional" or state that the two-year limitations period "must" be complied with, but these cases do not address the issue of waiver. (See *Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 427, 411 N.E.2d 16.) Accordingly, we hold that the two-year limitations period in section 2—1401 may be waived.

■ During the post-conviction hearing in this case, the State raised the statute of limitations defense with respect to count IV

orally at the hearing on the motion to dismiss the petition. Nevertheless, because the State did not plead the defense in its answer to the petition or raise the defense in its motion to dismiss, as required by the Code of Civil Procedure (see Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d)), we conclude that the defense has been waived in this case. See *Dick v. Gursoy* (1984), 124 Ill. App. 3d 185, 471 N.E.2d 195 (statute of limitations defense was waived where it was not raised in pleadings, even though the defense was raised orally during a hearing on a motion to amend the pleadings).

II

The State maintains that the trial court committed manifest error in vacating Ross' conviction because there was no evidence that blood was found inside the barrel of the gun. The State argues that People's exhibit 36 contained a cotton swab used to test the outside of the gun and that there was no evidence presented at trial or at the post-conviction hearing showing that People's exhibit 36 contained a swab used to test the inside of the barrel. We agree.

 █ The trial judge may grant relief under section 2—1401 if the petitioner proves that (1) if the ground for relief had been known at trial it would have prevented the entry of judgment against him; and (2) failure to discover and present the ground for relief was not the result of his own lack of diligence. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 283, 443 N.E.2d 253.) Newly discovered evidence is a proper basis for relief under section 2—1401. (*Ostendorf v. International Harvester Co.*, 89 Ill. 2d at 283.) At a hearing on a section 2—1401 petition, the determination of the credibility of the witnesses rests with the trier of fact, and the reviewing court will not substitute its judgment for that of the trier of fact unless it is against the manifest weight of the evidence. (*Uptown Federal Savings & Loan Association v. Kotsiopoulos* (1982), 105 Ill. App. 3d 444, 451, 434 N.E.2d 476.) Whether relief should be granted under section 2—1401 is within the trial court's discretion, and the reviewing court will not reverse the trial court's ruling absent an abuse of that discretion. *Galligan v. Washington* (1987), 163 Ill. App. 3d 701, 707, 516 N.E.2d 894.

In this case, Ross' entire theory rests on Quealy's testimony at trial that he swabbed the interior of the gun; Quealy's testimony that he submitted the swab contained in People's exhibit 36 to the State crime lab for testing; Podlecki's testimony that the swab contained in People's exhibit 36 tested positive for blood; and the impeachment of Quealy's testimony at the post-conviction hearing that he personally

performed a Kastle-Meyer test on the swab from the interior of the gun's barrel.

There is no evidence, however, that the cotton swab contained in People's exhibit 36 was the same cotton swab used by Quealy to swab the inside of the barrel. At trial, Quealy identified the swab contained in People's exhibit 36 as "the swab that was taken from the weapon found in the bedroom" only after ambiguous testimony regarding the procedure he used to swab the gun. At the post-conviction hearing, Quealy insisted that he discarded the swab taken from the inside of the barrel and that People's exhibit 36 contained the swab taken from the exterior of the gun. At trial and at the post-conviction hearing, Podlecki testified that he received and tested the cotton swab contained in People's exhibit 36 and that he could not determine the portion of the gun from which the swab was taken.

The only evidence indicating the portion of the gun from which the swab was taken is Quealy's testimony that the swab was taken from the exterior of the gun. Significantly, it is undisputed that Quealy observed blood on the exterior of the gun and submitted only one swab for testing. It is reasonable to conclude that the swab Quealy submitted for testing was the swab which he anticipated would yield positive results for blood, namely, the swab he used on the exterior of the gun. It is also significant that Quealy found "blackened soot" on the swab he took from the inside of the gun's barrel, but there is no evidence in either the trial or post-trial record that Podlecki found any soot on the swab contained in People's exhibit 36 submitted by Quealy for testing.

The testimony at the post-conviction hearing that evidence technicians are not permitted to perform chemical tests, but are required to send suspect blood samples to serologists for such testing; the evidence of the absence of references to chemical tests or the Kastle-Meyer procedure in Quealy's evidence reports; and the testimony of Donald DesRemaux, Quealy's supervisor, that he interpreted Quealy's evidence report in this case to refer only to a visual examination of the cotton swab, might support Ross' contention that Quealy did not perform a Kastle-Meyer test, but that evidence does not lead to the conclusion that Podlecki tested the same cotton swab that Quealy used to swab "the length of the barrel." The record reflects that the trial court itself was uncertain as to whether there was sufficient proof that blood was found inside the barrel of the gun, and ruled in favor of Ross because it believed the State's proof of guilt at trial was not strong and the State failed to preserve gunshot residue samples from the hands of Ross and Mrs. Ross, even though the sufficiency of

the proof at trial and the State's failure to collect residue samples were issues raised on appeal and rejected by this court.

 Because there was no evidence that Podlecki tested the same cotton swab Quealy used to swab the inside of the gun's barrel, because the tests Podlecki performed after receiving the gun from ballistics did not establish that blood was present inside the barrel of the gun, and because it is reasonable to conclude from all the evidence that the one swab Quealy submitted for testing was the swab he used on the exterior of the gun, we conclude that the trial court's finding, that blood was found inside the barrel of the gun, is against the manifest weight of the evidence. Because of the lack of evidence supporting the trial court's finding, and because the record reflects that the trial court itself was uncertain as to whether blood was found inside the barrel of the gun, we conclude that the trial court abused its discretion in granting Ross a new trial.

Because of our conclusion above, we need not decide whether blood inside the barrel of the gun and scientific studies regarding the significance of that evidence, would have been properly relied upon in granting relief under section 2—1401.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and Ross' conviction and sentence are reinstated.

Reversed.

HARTMAN and SCARIANO, JJ., concur.