**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210562-U

Order filed  May 25, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-21-0562 |
| v. | ) | Circuit No. 15-CF-36 |
| | ) | |
| DOMINQUE LADELL CARTER, | ) ) | Honorable Richard A. Zimmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court did not err by dismissing defendant's section 2-1401 petition where affidavits attached thereto merely impeached testimony of a trial witness but did not present newly discovered evidence casting doubt on the jury's verdict.

¶ 2    In 2015, a jury found defendant Dominque Ladell Carter guilty of armed robbery (720 ILCS 5/18-2(a)(2) (West 2014)) and aggravated robbery (*id.* § 18-1(b)(1)), and the circuit court sentenced defendant to 21 years in prison. In 2017, defendant filed a petition for relief of judgment with supporting affidavits. The State filed a motion to dismiss defendant's petition,

which the circuit court granted. Defendant appeals the circuit court's dismissal of his 2-1401 petition, asserting that the supporting affidavits attached thereto presented sufficient new evidence to warrant further proceedings. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On February 3, 2015, the State charged defendant with armed robbery and aggravated robbery for taking $300, a LINK card and a CSL Plasma card from Damon Foulks by threatening him with the imminent use of force while armed with a firearm. The case proceeded to a jury trial on May 27, 2015.

¶ 5        At trial, Foulks testified pursuant to a plea agreement on a pending charge of possession of cannabis with the intent to deliver. Foulks agreed to testify truthfully in exchange for a two-year sentence on the pending charge. According to Foulks, on January 18, 2015, he and Ontario Bester were at Keesha Anderson's house. When Foulks and Bester left to go to a liquor store, they were approached by two individuals, defendant and Demarcus March. According to Foulks, defendant and March came from the house next door, where defendant lived. Defendant said, "Where that shit at?" which Foulks understood to mean that defendant was robbing him. March brandished a knife, which Foulks grabbed and cut his hand. Defendant pulled out a gun and hit Foulks on the side of the face. Foulks yelled for Anderson to call the police. When defendant hit Foulks with the gun, Bester was sitting on the ground. Bester told Foulks to "give it to him, it ain't worth it." Foulks reached toward his pocket and defendant ripped the pocket and took Foulks's money, a Link card, and a plasma center donation debit card. Defendant and March then ran away.

¶ 6        When police asked Foulks to identify the people who robbed him, Foulks identified defendant by name and both defendant and March through photographs. Foulks said he had

2

"seen [defendant] around" prior to the day of the robbery. The police took photographs of Foulks's ripped pocket and the cut to his hand. Those photographs were presented in court and admitted into evidence.

¶ 7        At the time of trial, Foulks was in the same jail as defendant. Foulks testified that defendant repeatedly pressured him "to sign an affidavit so he can get out [of jail]." Foulks eventually provided an affidavit to defendant's trial attorney requesting that the charges against defendant be dropped. Foulks testified that he wrote the affidavit because he was "tired and done with it." Foulks thought the police would not believe him about the robbery because of his record. At trial, Foulks maintained that the robbery happened and that defendant was the individual who robbed him.

¶ 8        Bester testified that he was charged in this case and was testifying pursuant to a plea agreement. Bester testified that he was charged because Foulks thought Bester had set him up to be robbed. Bester pled guilty to attempted armed robbery and agreed to provide truthful testimony in exchange for a sentence of probation. Bester provided testimony similar to Foulks's regarding the robbery. He identified defendant and March as the men who robbed Foulks and testified that defendant had a gun and March had a knife. Bester knew both defendant and March prior to the incident.

¶ 9        Sergeant Sean Roman of the Rock Island Police Department testified that when he showed Foulks a photographic lineup on the night of the robbery, Foulks identified defendant as the individual who "[p]ut the gun on me. 100 percent." Before the lineup, Foulks told Sergeant Roman that defendant robbed him and had a gun.

¶ 10        Sergeant Roman interviewed defendant. When he asked defendant about the robbery, defendant initially denied knowledge of it or the participants involved. Later, during questioning,

defendant said "so you said I was at [Anderson]'s crib and I robbed someone with a gun." Sergeant Roman testified that at that point in the interview, he had not mentioned a gun or that he was investigating a robbery at Anderson's residence.

¶ 11　　The defense called Anderson as a witness. She testified that she was with Foulks on January 18, 2015. Bester had been with them but left to go to a store. She entered her kitchen and heard Foulks calling for her to call the police. She went to the door and saw two individuals in black running away from her house. She ran after one individual, but he got away. She heard Foulks tell the police that the individuals who robbed her were defendant, Bester, and a third person.

¶ 12　　The defense then called Sinae Tate, defendant's girlfriend, to testify. Sinae lived with her sister, Tana Tate, and defendant. Sinae testified that neither she nor defendant left the house on January 18, 2015.

¶ 13　　The jury found defendant guilty of both counts. The court merged the convictions and sentenced defendant to 21 years' imprisonment for armed robbery. Defendant appealed. This court affirmed in part, vacated defendant's sentence in part, and remanded for the court to amend the sentencing order and conduct a preliminary inquiry into defendant's *pro se* allegations of ineffective assistance of counsel. *People v. Carter*, 2017 IL App (3d) 150572-U, ¶ 45.

¶ 14　　In April 2017, while his appeal was pending, defendant filed, as a self-represented litigant, a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). Defendant argued that he possessed new evidence impeaching Foulks's credibility and casting doubt on the jury's verdict. The new evidence consisted of two affidavits. One affidavit was from Anderson and stated that Foulks gave her cannabis to sell, that defendant stole the cannabis, and that when Foulks found out, he threatened

4

to harm defendant. The other affidavit was from Shaleka Rhoden, defendant's sister, and stated that while defendant was in jail a woman approached her and told her that someone wanted to speak with her. The woman handed Rhoden a phone, and a male voice identified himself as Foulks. She also recognized the voice as Foulks's. Foulks told her that defendant was going to prison unless she did something to help him and that if she gave Foulks $400 "he would tell the truth that [defendant] did not rob him." Foulks was in jail and asked to have the money put on his account. Rhoden told Foulks she only had $200 but could get the other $200 in a couple weeks, and he agreed. Rhoden gave $200 to Tana, and she put it into Foulks's jail account. Rhoden did not give him the remaining $200. Both affiants averred that they just recently informed defendant of the facts contained in their affidavits.

¶ 15 Defendant included an affidavit of his own in which he averred he received Rhoden's affidavit in December 2016, and Anderson's affidavit in March 2017. He further averred that he was not aware that Foulks had "ill will" for him at the time of his trial. Defendant averred that he had to "dig the facts" out of Rhoden and was not aware of them at the time of his trial.

¶ 16 In October 2018, the circuit court appointed counsel to represent defendant on his section 2-1401 petition. Counsel did not amend or supplement defendant's petition. In April 2021, the State filed a motion to dismiss the petition arguing that a new trial was not warranted because (1) the evidence was cumulative of the impeaching evidence introduced at trial, (2) the evidence was not so conclusive that it was likely to change the outcome of the trial, and (3) the State's other evidence of defendant's guilt was strong.

¶ 17 Defense counsel filed a response to the State's motion to dismiss arguing that the evidence was not cumulative and presented facts that had not been heard by the jury. He argued that when the new evidence was combined with the evidence at trial, it undermined the jury's

verdict. The State filed a reply brief again arguing that the new evidence merely impeached Foulks's credibility. Following a hearing on the State's motion to dismiss, the court dismissed defendant's section 2-1401 petition finding that defendant's evidence was not of such a material and controlling nature as to create a reasonable probability of a different outcome in light of the evidence at trial.

¶ 18                                    II. ANALYSIS

¶ 19        Defendant argues that the court erred by dismissing his section 2-1401 petition because he presented sufficient new evidence to state a claim for relief which warranted an evidentiary hearing. Specifically, he argues that taking the allegations in Rhoden's affidavit as true, the affidavit established that Foulks perjured himself at trial and defendant's conviction could not stand.[1]

¶ 20        "Newly discovered evidence is a proper basis for relief under section 2-1401." *People v. Ross*, 191 Ill. App. 3d 1046, 1054 (1989). "[N]ewly discovered evidence warrants a new trial when (1) it has been discovered since trial; (2) it is of such a character it could not have been discovered prior to trial by the exercise of due diligence; (3) it is material to the issue and not merely cumulative; and (4) it is of such a conclusive character it will probably change the result on retrial." *People v. Davis*, 2012 IL App (4th) 110305, ¶ 26. As to the conclusive nature of the evidence, a defendant must show that it is " 'more likely than not' a jury would acquit defendant after a new trial where the new evidence *** is considered alongside the original trial evidence." *People v. Whalen*, 2020 IL App (4th) 190171, ¶ 103 (quoting *People v. Edwards*, 2012 IL

---

[1]Defendant also argues that if this court were to determine that Rhoden's and Anderson's affidavits could not be used to support the petition because they are hearsay, then his appointed counsel did not provide the required due diligence in representing him as counsel should have converted the petition to a postconviction petition. Because we do not base our decision on the propriety of the affidavits supporting the petition, we need not reach this argument.

111711, ¶ 40)). "[A] new trial will not be granted based on evidence that only discredits or impeaches a witness." *People v. Waters*, 328 Ill. App. 3d 117, 128 (2002). "[I]n ruling on a motion to dismiss a section 2-1401 petition, all well-pleaded facts are to be taken as true." *Padilla v. Vazquez*, 223 Ill. App. 3d 1018, 1026 (1991). "The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Kanerva v. Weems*, 2014 IL 115811, ¶ 33.

¶ 21    Here, even accepting the allegations of defendant's section 2-1401 petition and Rhoden's[2] affidavit as true, we conclude that defendant has not presented evidence that is so conclusive that it is more likely than not the jury would acquit if the new evidence was presented. With respect to newly discovered evidence, our supreme court has stated:

> " 'A distinction is to be drawn between evidence which impeaches a witness in the sense that it affects the credibility of the witness, and evidence which is probative in that it presents a state of facts which differs from that to which the witness testified. Newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness, does not afford a basis for the granting of a new trial. If, however, it contradicts a witness by showing facts, a new trial may be ordered when it appears that such new evidence has sufficient probative force or weight to produce a result different from that obtained at the trial which has been had.' " *People v. Smith*, 177 Ill. 2d 53, 82-83 (1997) (quoting *People v. Holtzman*, 1 Ill. 2d 562, 568 (1953)).

---

[2]We limit our analysis to Rhoden's affidavit, as defendant only provides argument in regard to her affidavit, not Anderson's affidavit.

With that distinction in mind, we determine that Rhoden's affidavit merely tends to affect Foulks's credibility rather than provide a set of facts that are different than what Foulks testified to at trial. Specifically, Rhoden averred that Foulks called her from jail and told her he would tell the truth that defendant was innocent if she paid him. If that information was available to defendant at the time of trial, it would have only served to discredit Foulks's trial testimony because it was merely a prior inconsistent statement. See *id.* at 83 ("Generally, a prior inconsistent statement of a witness is not admissible as substantive evidence but, rather, is admitted solely for its impeaching effect upon the credibility of the witness."). Therefore, the affidavit is only impeaching and not sufficient to state a claim for a new trial based upon newly discovered evidence. See *Waters*, 328 Ill. App. 3d at 128.

¶ 22 Further, Rhoden's affidavit does nothing to contradict or discredit Bester's testimony or the fact that when Sergeant Roman interviewed defendant, he knew details of the crime that Sergeant Roman had not told him. As to this last point, on appeal defendant argues that it is possible he could have learned the information from someone in the neighborhood. However, defendant did not even allege as much in his section 2-1401 petition and certainly would have known that information at the time of trial such that if that was the case, he could and should have presented that information during trial. Based on the foregoing, we conclude that the circuit court did not err in dismissing defendant's section 2-1401 petition.

¶ 23                                    III. CONCLUSION

¶ 24 The judgment of the circuit court of Rock Island County is affirmed.

¶ 25 Affirmed.