*In re* MARRIAGE OF CONSTANCE KEHRES, formerly Hurst, Respondent-Appellant, and TERRY L. HURST, Petitioner-Appellee.

Fifth District    No. 5—86—0649

Opinion filed December 7, 1987.

Hillebrand & Stubblefield, P.C., of Belleville, for appellant.

Frierdich, Lopinot, Buser & Morris, Ltd., of Cahokia, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Respondent, Constance Kehres, filed a motion in the circuit court of St. Clair County pursuant to section 8(b) of the Uniform Child Custody Jurisdiction Act (UCCJA) (Ill. Rev. Stat. 1985, ch. 40, par. 2108(b)) requesting that the court decline to exercise its jurisdiction on grounds of *forum non conveniens* with respect to a contempt petition filed by petitioner, Terry L. Hurst. In that petition, Hurst alleged that respondent had violated a prior order entered by the court regarding child visitation rights. Following a hearing, respondent's motion was denied. We granted her leave to appeal under Supreme Court Rule 306 (107 Ill. 2d R. 306), and we now affirm.

Respondent and petitioner were married in St. Clair County, Illinois, on August 6, 1979. This union produced two children, Jennifer

and Jessica Hurst, who resided with their parents in the State of Illinois.

On June 28, 1982, a judgment was entered by the circuit court of St. Clair County dissolving the parties' marriage. That judgment approved and incorporated by reference a marital settlement agreement executed by the parties which provided for joint legal custody of the children. The agreement specified, *inter alia*, that petitioner was to have physical custody of the children during the school year, while respondent was to have physical custody during summer vacations. It also set forth a visitation schedule.

In January of 1985, problems developed regarding the visitation and communication privileges of respondent, who had, by this time, moved to Virginia. Both petitioner and respondent sought relief from the circuit court of St. Clair County, and the court set all pending motions for a hearing to be held on March 27, 1985. In the meantime, the State's Attorney for St. Clair County, through the Department of Children and Family Services (DCFS), commenced juvenile proceedings to remove the children from petitioner's home based on allegations of child abuse.

Various developments then took place. The circuit court of St. Clair County removed physical custody of the children from petitioner and ordered that a home study be conducted of respondent in Virginia to aid in determining whether custody should be changed. Respondent, in turn, petitioned for modification of the original judgment of dissolution with respect to custody of the children, and, on May 22, 1985, a temporary agreement was reached under which respondent was awarded custody and allowed to move the children to Virginia. Petitioner was given visitation privileges, and the court ordered respondent to obtain counseling for the children in Virginia, which was to be monitored by the Illinois DCFS. At that time, the children began to reside and have continued to reside with respondent at her home in Virginia.

The children commenced counseling with a doctor in Virginia, and on August 23, 1985, Virginia social services authorities filed a home study report with the court in St. Clair County. Early the following month, that court affirmed placement of the children with respondent and ordered supervision for six months by DCFS through Virginia social services. This was done as part of the juvenile proceedings which had been commenced by the State's Attorney. Shortly thereafter, on September 26, 1985, the circuit court further granted respondent's petition for modification of the original judgment of dissolution. In its modification order, the court awarded custody of the children to re-

spondent, subject to six months of supervision by Virginia social services authorities, and granted visitation rights to petitioner, including the right to communicate with the children by telephone.

Less than four months later, in January of 1986, petitioner filed his petition in the circuit court of St. Clair County asking that respondent be held in contempt for violation of the provisions of the September 26, 1985, order. This petition was set for hearing on March 12, 1986. On that date, however, respondent filed a motion pursuant to section 8(b) of the UCCJA (Ill. Rev. Stat. 1985, ch. 40, par. 2108(b)) in which she requested that the circuit court decline to exercise jurisdiction over the contempt proceedings on grounds of *forum non conveniens.*

Respondent apparently decided not to wait for a ruling on this motion. Instead, she filed a motion in the Juvenile and Domestic Relations District Court of Fairfax County, Virginia, to limit petitioner's visitation rights. Petitioner appeared in the Virginia court to challenge that court's jurisdiction to rule on respondent's motion and to obtain enforcement of the visitation rights previously ordered by the circuit court of St. Clair County. When the circuit court of St. Clair County learned of these proceedings, it stayed a ruling on respondent's *forum non conveniens* motion until it could communicate with the court in Virginia. See Ill. Rev. Stat. 1985, ch. 40, par. 2108(d).

What occurred next is unclear. In an order dated June 16, 1986, the Virginia court refused to enforce the terms of the St. Clair County circuit court's order regarding visitation as requested by petitioner on the grounds that petitioner had not properly moved for such relief, it denied respondent's motion for limitation of visitation "for lack of evidence," and it decreed "that this court finds it unnecessary to rule on whether the simultaneous proceedings should be adjudicated in Virginia or Illinois." At the same time, however, it indicated that it had communicated with the circuit court of St. Clair County by telephone and was told by that court that "all proceedings should remain under the jurisdiction of the Illinois Court and that this Court should therefore decline jurisdiction."

After this order was entered, petitioner seems to have registered a copy of the September 26, 1985, order by the circuit court of St. Clair County with the court in Virginia and to have renewed his motion there for enforcement of the visitation provisions of that order. This time the motion was properly presented, but to a different judge. In an order dated July 21, 1986, granting petitioner's renewed motion, the second Virginia judge found that the court there had jurisdiction to enforce the September 26, 1985, order, but that it could not

modify that order because it, too, had telephoned the circuit court in St. Clair County and had been told that the Illinois court "intended to retain jurisdiction" and "has decided not to decline to exercise jurisdiction" over the custody and visitation issues relating to the parties' children.

While there is some suggestion that an appeal was taken by respondent from at least one of these Virginia orders, we are unable to ascertain from the record before us what became of that appeal. What we do know is that on August 4, 1986, respondent filed a second motion to modify petitioner's visitation rights. This motion was presented to the court in St. Clair County, not Virginia.

Two weeks later, on August 18, 1986, petitioner filed a second petition for contempt in the circuit court of St. Clair County alleging that respondent had failed to obey not only the terms of the St. Clair County circuit court's original order of September 26, 1985, regarding visitation, but also the subsequent order by the Virginia court enforcing those terms. Petitioner amended this second petition on August 25, 1986. At the same time, he moved for and obtained leave to file a motion to modify the "custody judgment entered into this case on September 26, 1985" to grant custody of the children to him. That motion was thereupon filed.

A hearing on respondent's motion to decline jurisdiction was finally held by the circuit court of St. Clair County two days later, on August 27, 1986. At the hearing the court indicated that it had not, in fact, asked the Virginia courts to decline jurisdiction. Nevertheless, it reasoned that because the Virginia courts had now ruled that they would not exercise jurisdiction over the case, St. Clair County was the only forum in which matters relating to custody and visitation were still pending and was the only forum still available to the parties. In the court's words, St. Clair County "may not be the most convenient forum, but it's the only forum we've got now." Accordingly, the court denied respondent's motion to decline jurisdiction, ordered respondent to comply with the provisions of its September 26, 1985, order "as to telephone communications," and set all remaining matters for a hearing the following month. This appeal followed.

By virtue of section 601(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(a)), section 4 of the UCCJA (Ill. Rev. Stat. 1985, ch. 40, par. 2104) applied to the jurisdictional matters at issue here. The parties do not dispute that the circuit court of St. Clair County had jurisdiction under section 4(a) of the UCCJA (Ill. Rev. Stat. 1985, ch. 40, par. 2104(a)) to make the initial custody determination at the time the parties' marriage was dis-

solved and to modify that determination in its order of September 26, 1985. Because the court had thus acquired jurisdiction, section 4(b) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 2104(b)) governed any further custody determinations in the case. That section provides that a court,

"once having obtained jurisdiction over a child, shall retain such jurisdiction unless it concedes jurisdiction to a foreign state or none of the parties to the action, including the child, remain [sic] in Illinois." (Ill. Rev. Stat. 1985, ch. 40, par. 2104(b).)

Here, petitioner continues to reside in Illinois. Accordingly, the circuit court of St. Clair County was authorized to pass on his contempt petition unless it decided to decline jurisdiction to the courts in Virginia as requested by respondent.

■ The standards applicable to such decisions are set forth in section 8 of the UCCJA (Ill. Rev. Stat. 1985, ch. 40, par. 2108), which provides, in part:

"A court which has jurisdiction under this Act to make an initial or modification judgment may decline to exercise its jurisdiction any time before making a judgment if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Ill. Rev. Stat. 1985, ch. 40, par. 2108(a).

According to section 8(c) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 2108(c)):

"In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

1. if another state is or recently was the child's home state;

2. if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

3. if substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

4. if the parties have agreed on another forum which is no less appropriate; and

5. if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in Section 2 of this Act."

At the same time, section 8(d) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 2108(d)) states:

"Before determining whether to decline or retain jurisdiction the court may communicate with the court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the most appropriate court and that a forum will be available to the parties."

The foregoing principles cannot be applied in a mechanical fashion, but require the exercise of discretion by the trial court. Accordingly, a trial court's decision not to decline jurisdiction to a foreign court will be affirmed absent an abuse of that discretion. (See *In re Marriage of Kitchen* (1984), 126 Ill. App. 3d 192, 196-97, 467 N.E.2d 344, 348.) We find no such abuse of discretion here.

At the time the circuit court in this case heard respondent's motion to decline jurisdiction, the Virginia courts had already determined that they should not exercise jurisdiction over the parties' dispute. This determination was made following communication between those courts and the circuit court of St. Clair County as authorized by section 8(d) of the UCCJA (Ill. Rev. Stat. 1985, ch. 40, par. 2108(d)). While the Virginia courts' determination may have been based on a misunderstanding of the Illinois court's intentions, that determination was an accomplished fact which the circuit court of St. Clair County was bound to acknowledge. Under these circumstances, if the circuit court of St. Clair County had declined jurisdiction as well, the parties might have been left without any forum at all in which to litigate their dispute. At best, they would have been required to initiate a new round of proceedings in the Virginia courts which would almost certainly have delayed disposition of the pending motions substantially. Neither result would have advanced the best interests of the children.

■ There is another reason why we believe that the circuit court of St. Clair County ruled correctly. To be sure, the circuit court's ruling was expressly founded upon its concern about the possible absence of an alternative forum. The relative convenience of Illinois and Virginia was not directly addressed. The only comment made by the circuit court on this subject was, as we have noted, that St. Clair County "may not be the most convenient forum." The law in this State, however, is that a reviewing court is not bound to accept the reasons given by the trial court for its judgment, and the judgment may be sustained on any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason

given by the trial court was correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9,12.) Our review of the record has persuaded us that respondent failed to establish that St. Clair County was in fact an inconvenient forum or that the courts of Virginia would have provided a more appropriate forum.

■ Because the children had resided with respondent, their mother, for at least six consecutive months prior to the filing of petitioner's petition for contempt, Virginia had superseded Illinois as their "home state." (See Ill. Rev. Stat. 1985, ch. 40, par. 2103.04.) We must also observe, however, that the children had spent most of their lives in Illinois and had been absent from this State only since May 22, 1985, less than eight months before petitioner's first contempt petition was filed, when the circuit court of St. Clair County allowed respondent to move them. Prior to that time a home study report of respondent was conducted by Virginia social services authorities, but that study was conducted pursuant to an order of the circuit court of St. Clair County and the results were filed with that court. The subsequent supervision and counseling received by the children in Virginia were likewise undertaken pursuant to orders by the circuit court of St. Clair County. Petitioner himself continues to reside in Illinois, and under the terms of the September 26, 1985, order, which has not yet been modified, he is entitled to have the children visit him here for six consecutive weeks each year during the summer months. We believe that these factors indicate that the children retain a significant connection with this State and that there is available here substantial evidence concerning their care, protection, training and personal relationships. (See *Hollo v. Hollo* (1985), 131 Ill. App. 3d 119, 125, 474 N.E.2d 827, 832; *Jennings v. Jennings* (1985), 133 Ill. App. 3d 753, 756, 479 N.E.2d 419, 422.) Respondent makes the conclusory statement that "[a]ll of the expert opinion regarding the mental and physical health and well-being of the children is *** available in Virginia and not Illinois," but the record fails to substantiate this claim. Some information of this nature has, in fact, already been submitted to the circuit court of St. Clair County.

Respondent points out that the courts in Virginia are already familiar with this case, yet the materials submitted by respondent indicate that virtually all of the substantive child custody issues which have arisen between the parties have been adjudicated by the circuit court of St. Clair County, not the courts in Virginia. In addition, we note that after petitioner initiated contempt proceedings in the circuit court of St. Clair County, respondent herself filed a petition to modify in that court. This was apparently done in response to the determina-

tion made by the Virginia courts that they were without jurisdiction to grant such a motion. We think it significant, however, that respondent apparently took such action without first prosecuting to completion an appeal in Virginia and without even awaiting a decision by the circuit court of St. Clair County on her motion to decline jurisdiction. Such conduct is, in our view, inconsistent with respondent's claim that St. Clair County is not a convenient or appropriate forum.

For the foregoing reasons, the order of the circuit court of St. Clair County denying respondent's motion to decline jurisdiction is affirmed.

Affirmed.

KARNS, P.J., and LEWIS, J., concur.