*In re* MARRIAGE OF JOHN A. STASZAK, Petitioner-Appellant, and CHERYL L. STASZAK, Respondent-Appellee.

Fourth District   No. 4—91—0315

Opinion filed December 19, 1991.

Stephen R. Ryan, of Ryan, Cini, Bennett & Radloff, of Mattoon, for appellant.

K. Rick Keller, of Meyer, Keller & Runde, of Effingham, for appellee.

JUSTICE LUND delivered the opinion of the court:

Petitioner John Staszak appeals from orders of the circuit court of Cumberland County in this marriage dissolution case, contending it was error for the trial court to enter a post-dissolution order granting respondent Cheryl Staszak actual custody of the parties' son, Jason, during the school year. Petitioner argues the pleadings that resulted in the contested custody order did not contain a prayer for the relief granted. In the alternative, petitioner contends the trial court's deci-

sion modifying custody was against the manifest weight of the evidence.

The problems now before the court stem from what was to be an agreed dissolution agreement, whereby petitioner was represented by counsel but respondent was not. Respondent was the mother who had custody of a child, Christopher Senteney, and the parties were the parents of Jason Staszak, born January 13, 1982. The present dispute concerns the actual custody of Jason.

The petition for dissolution was filed February 5, 1990, and attached to that petition was a marital settlement agreement dated January 24, 1990, which was signed by both petitioner and respondent. Respondent's entry of appearance and consent to an immediate hearing was filed at the same time the petition was filed. The court file contains proof of mailing of a notice to respondent of a March 1, 1990, "hearing on Motion for setting on March 1, 1990 at 10:00 AM." On March 1, 1990, a judgment of dissolution of marriage was entered by Judge Thomas M. Burke. That judgment provided, in part:

"5. That one (1) child was born of the marriage, to wit: **JASON ALEXANDER** born January 13, 1982, none were adopted and the Petitioner is not now known to be pregnant.

\* \* \*

B. That the written Separation Agreement entered into between the parties, is made a part of this Judgment of Dissolution of Marriage, and all the provisions of said order are expressly ratified, confirmed, approved and adopted as the orders of this Court and ordered consummated as soon as possible."

Except for incorporating the agreement, the dissolution judgment made no specific reference to child custody. The parts of the marital settlement agreement relevant to this appeal state:

"*ARTICLE II*
**Custody of Children**

1. Husband and Wife agree that each is a fit and proper person to have the custody of their child, but have decided that a joint custody arraignment [*sic*] is appropriate with **JOHN A. STASZAK**, as the primary custodian. It [is] expressly agreed and understood by and between the parties that Husband retains the right and obligations to execute any necessary consents, medical permissions, educational decisions and the like. Husband may delegate these and like responsibilities to the wife and expressly herein agrees not to unreasonably withhold such delegation. All such decisions shall be ultimately decided with due regard for the best interests of the child.

2. Both Husband and Wife shall use their best efforts to foster the respect, love and affection of the children, toward each parent and shall cooperate fully in implementing a relationship with the children that will give the maximum feeling of security that may be possible. The parties shall further cooperate fully in implementing the visitation programs herein after [sic] set forth to accommodate the social and school commitments of the children.

3. Both Husband and Wife shall keep each other informed as to the exact place where each of them resides, the telephone numbers of their places of employment. Wife agrees not to take **JASON** out of the State of Illinois without the express written permission of the husband. If either party travels out of state for any period of time, then such person shall notify the other of his or her destination and provide a telephone number where her [sic] or she can be reached.

4. Each party shall advise the other of any serious illness or injury suffered by any child as soon as possible after learning of the same. Each party shall direct all doctors involved in the care and treatment of such child to give the other party all information regarding the illness if they requests [sic] same.

*ARTICLE III*

**Child Visitation**

1. Each grandparents [sic] shall have reasonable rights of visitation with the child of the parties.

2. The minor child shall continue to reside with the wife for the remainder of this school year and then with the husband beginning with the summer vacation immediately after this school year. Each party retains visitation with the minor child of two (2) weekends per month during the time said child is residing with the other parent. In addition, and in consideration of the fondness felt by the husband and the integration achieved to date, Wife grants to husband reasonable non-specific visitation with her other son, **CHRISTOPHER LEE SENTENEY**.

3. Each party shall be granted non specific [sic] visitation as is reasonable and agreeable with the parties and with the children.

3. [sic] If any child becomes seriously ill or injured during the time of visitation the parent in charge shall notify the other of the same as soon as possible and shall give details of said ill-

ness or injury and the name and telephone number of the attending physician, if any.

## ARTICLE IV
### Child Support and Related Matters

1. Husband shall pay to the Clerk of the Circuit Court of Cumberland County for the support and maintenance of the minor children, the sum of 20% of his net income. The parties agree that the current amount certain payable shall be the sum of **TWO HUNDRED NO/100 DOLLARS ($200.00)** monthly, payable only during those months the minor child actually resides with the mother. Said sum shall continue until **JASON ALEXANDER STASZAK** obtains the age of eighteen years or becomes emancipated, which ever occurs first. Wife shall keep the Circuit Clerk advised as to her current address so that support checks may be forwarded to her without delay. Statutory Deduction Order will not issue until such time as the husband become [*sic*] delinquent in said payments."

On April 2, 1990, respondent, by the attorney now representing her, filed a motion to modify judgment of dissolution of marriage, stating the settlement agreement did not contain the entire agreement as to "physical custody and living arrangements" of Jason. The motion stated, in part:

"6. That the true agreement was that Respondent would have physical possession of the minor child during the nine months of the school year and Petitioner would have physical possession of the minor child during the three month summer vacation.

7. That Respondent did not fully or completely understand the legal significance of the documents she signed, and had she so understood, would not have signed them.

8. That justice and the best interests of the minor child require that the Judgment concerning custody be vacated.

WHEREFORE, Respondent, CHERYL L. STASZAK, prays that the portion of the Judgment of Dissolution of Marriage be vacated and the issue be set for hearing."

Petitioner answered the motion on May 17, 1990, denying respondent's allegations in paragraph Nos. 6 and 8.

On May 31, 1990, Judge Burke denied a motion to dismiss respondent's motion and heard testimony from both petitioner and respondent. Respondent's testimony basically related to the pressure on her to sign the agreement without reading it. She testified she understood she would have custody of Jason during the various school

years, and petitioner would have custody during the summers. Both petitioner and respondent testified that no lawyer was present at the time of the signing, and the signatures were acknowledged at the Mattoon police department. A copy of the agreement was *not* given to respondent at the time of signing. She denied receiving notice of the March 1, 1990, court hearing. At the May 31, 1990, hearing, there was also an insignificant amount of evidence as to the best interest of Jason, and a very limited examination of the petitioner. At the end of the evidence and arguments, the trial judge's oral decision contained the following statement:

"Under these circumstances, I am inclined to feel that the testimony of Mrs. Staszak as to what happened on that occasion is more credible and I am inclined to accept it as more nearly a clear statement of what happened. She had been led to believe that Mr. Staszak had yielded on that point but Mr. Staszak hurried her to the point where she wasn't able to verify that. She was obviously nervous and upset at that time as she was nervous and upset at the time she testified in this courtroom.

Under those circumstances, I believe that there has been an overpowering influence on this Respondent by the Petitioner in securing the execution of that document and all of this conduct on that occasion tends to indicate that he intended to keep from her the terms and conditions of that [*sic*] custody arrangements of that document. Under those circumstances, I am inclined to believe that there is merit to the proposition that the document does not in fact state the agreement that the parties had entered into and that Mr. Staszak knew at the time it was executed that it did not state the agreement that the parties had entered into. So, I find that the prayer [f]or the Motion for Modification of the Judgment of Dissolution shall be granted. However, I see no reason in this case to strike all of the provisions with reference to custody. The contention of Mrs. Staszak is that she entered into an agreement; and on the basis of the ruling of the Court, I feel like she is entitled to that agreement and nothing more. There is no reason to relitigate questions—of all of the questions of custody and control. In her petition—in her motion and in her testimony, she says that the agreement was that she should have the custody of the minor child during the nine months of the school year and that the Petitioner would have—should have the custody of the minor child during the three months summer vacation. It is my order that this

Judgment of Dissolution of Marriage which was entered in this case on March 1st of 1990 will be so modified."

Following this statement, respondent's attorney was directed to prepare a written order. Petitioner's attorney immediately objected to the court's decision, arguing that custody was being fixed without a hearing as to the best interests of the child.

On June 28, 1990, petitioner filed a motion to reconsider or, in the alternative, for a new trial. That motion, in part, argued the issues presented in this present appeal. The written order, which the court had directed to be prepared on May 31, 1990, was executed and filed on August 13, 1990. On that same date, other matters in the case were considered, and Judge Burke heard the motion for reconsideration. The motion was taken under advisement, but Judge Burke retired from the bench without ruling on it.

Petitioner changed attorneys and, on January 22, 1991, filed a motion for hearing *de novo*, suggesting the absence of a decision on the motion for reconsideration, coupled with the retirement of the previous judge, required a new hearing as to the matters heard on May 31, 1990. The *de novo* motion hearing was argued on March 19, 1991, and the presiding judge issued a decision letter on March 26, 1991, filing an order on April 10, 1991, and denying the hearing *de novo*.

Initially, we acknowledge that additional matters relating to visitation and contempt are part of the record, but we find they are not relevant to this appeal and we have not considered them. We further hold there was sufficient evidence presented at the May 31, 1990, hearing to justify Judge Burke's decision, holding that the provision in the marital settlement agreement did not accurately reflect the parties' agreement as to child custody and, therefore, had to be modified. However, we do not agree with that part of the order automatically amending the custody agreement without providing a best-interest hearing.

The May 31, 1990, hearing was basically limited to the question of whether respondent understood and agreed to a child-custody provision, giving actual custody of Jason to petitioner for an indefinite period of time beginning summer 1990. No attempt was made by either petitioner or respondent to litigate the best-interest issue at the time of the May 31, 1990, hearing. Petitioner took the position that he had the right to actual custody at the beginning of the summer and continuing through the school year, and respondent took the position she had not agreed to such a provision and did not understand that it was in the agreement.

■ The principal child-custody provisions are contained in sections 601 through 611 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, pars. 601 through 611). The determining factor in custody disputes is the best interest of the child. In the absence of an agreement between the parties, a hearing by the court, with evidence by all sides being presented and considered, is necessary. See *Henrikson v. Henrikson* (1975), 26 Ill. App. 3d 37, 39, 324 N.E.2d 473, 475; Ill. Rev. Stat. 1989, ch. 40, par. 602; 1 H. Gitlin, Gitlin on Divorce par. 11.07(A) (1991).

■ It is clear from the record there is a dispute over the custody of Jason. We do not understand this case to be one where the parties are disputing the interpretation of the agreement, even though some question of its intent might exist. With the determination that respondent at no time intended to agree to petitioner's indefinite custody after the beginning of summer 1990, it is apparent there was a difference of opinion between the parties as to the question of custody. In such cases, there cannot be an adjudication of custody without the presentation of evidence and an opportunity to cross-examine. Such a hearing was not granted in this case, and the trial court must be reversed.

We conclude that only the child-custody matters and related child-support issues contained in the marital settlement agreement need be vacated. The joint-custody provision in that agreement must also be reconsidered, including the provisions of article II, paragraph (1) of the agreement, wherein the husband purports to retain "the right and obligations to execute any necessary consents, medical permissions, educational decisions and the like," though he may "delegate" these responsibilities to the wife. The trial court should now provide a full hearing and make a determination regarding the matters vacated, and the joint-custody provision thus called into question.

Reversed in part, and remanded with directions.

GREEN, P.J., and McCULLOUGH, J., concur.