*In re* MARRIAGE OF SUSAN C. LINDJORD, n/k/a Susan C. Wilson, Petitioner-Appellant, and JON D. LINDJORD, Respondent-Appellee.

Second District    No. 2—91—1210

Opinion filed September 9, 1992.

---

Sidney Abelski and Scott Bagnall, both of Abelski & Bagnall, of Chicago, for appellant.

David P. Kirsh, of Kalcheim, Schatz & Berger, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Petitioner, Susan C. Lindjord, n/k/a Susan C. Wilson, appeals from an order of the circuit court of Lake County which dismissed her petition pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401). The petition sought to vacate the judgment of dissolution which dissolved her marriage to respondent, Jon D. Lindjord. The sole issue raised by petitioner on appeal is whether the trial court abused its discretion in dismissing the section 2—1401 petition, with prejudice, absent a finding that petitioner could never adequately plead a section 2—1401 petition. We affirm.

Petitioner filed her petition for dissolution of marriage on June 25, 1990. She stated that she was 38 years old and respondent was 42 years old. She and respondent were married on June 14, 1985. No children were born or adopted during the marriage, but petitioner had two children from a prior marriage. Petitioner also filed a petition for temporary relief, seeking maintenance and attorney fees. She alleged that she was employed only on a part-time basis while she was a full-time student. Her affidavit filed the same day stated that she was unemployed.

Respondent filed an affidavit of income and expenses which stated that his gross monthly income was $12,333.32, or $147,999.84 per year. He also filed a counterpetition for dissolution of marriage and alleged that petitioner would be receiving a college degree in June or July 1990. In his response to petitioner's petition for temporary relief, respondent alleged that he had paid for petitioner's education and that she was now fully capable of obtaining full-time employment to support herself and her children.

An order was entered on June 25, 1990, which stated that respondent was to pay petitioner temporary maintenance in the amount of $1,500 per month until trial. He was also to pay petitioner's attorney $1,500 in temporary fees. The order stated that neither party was obligated to pay the mortgage on the marital residence. Petitioner filed a motion to reconsider this order, alleging that she did not have the ability to pay the monthly mortgage payment on the marital residence of $2,189.34. She alleged that respondent had the ability to pay the mortgage and noted that his affidavit of income and expenses "did not include the bonus the [respondent] receives on an annual basis." She argued that failing to order respondent to make these payments would result in the dissipation of the principal asset of the parties. The court denied petitioner's motion.

On December 13, 1990, an oral settlement agreement was presented to the court. Petitioner testified that respondent moved out of the marital residence on February 21, 1990. They had been separated since that date, and she had continued to live in the marital residence. She essentially testified that irreconcilable differences had caused the irretrievable breakdown of the marriage. She asked that her previous surname, Wilson, be restored.

Respondent testified regarding the terms of the agreement. He stated that he had agreed to pay petitioner $1,500 per month as maintenance for a period of one year beginning December 15, 1990. He also agreed to pay her an additional $10,000 as maintenance, $8,000 when she vacated the marital residence on January 30, 1991, and

$2,000 on December 13, 1991. He testified that she would not receive any further maintenance or support and was waiving maintenance other than the $28,000 provided for in the agreement. Respondent stated that he would receive sole ownership of the marital residence, and petitioner and her children would move out of the residence by January 30, 1991. He testified that, if the residence was not in good repair, he would be able to reduce the maintenance payments to petitioner to make the repairs caused by petitioner or her children.

Petitioner was to receive all of the personal property contained in the home, except the refrigerator, the stove and a Toshiba computer. Respondent was responsible for the deficiency on the mortgage and any unpaid real estate taxes on the home. Petitioner was allowed the use of a Dodge Caravan automobile until January 30, 1991. She was responsible for payments on the van until then, and respondent would be responsible for the debt on the van after that date. Respondent was also responsible for income tax liabilities in connection with joint tax returns. Respondent stated that he and petitioner were each responsible for his or her own attorney fees and costs. Each party would retain possession of any other property in his or her name.

A judgment of dissolution of marriage was entered on December 27, 1990. The judgment was prepared by respondent's attorneys and was signed as approved by petitioner's attorney. The judgment incorporated the terms of the parties' settlement agreement. The judgment specifically stated that each party would be solely responsible for any and all fees or costs incurred by him or her in this litigation and also contained the following provision:

"Until such time as [petitioner] vacates the marital residence, which shall be on or before January 30, 1991, [petitioner] shall maintain said premises in a clean, neat and proper condition. [Petitioner] warrants that she has not committed any waste or done any damage to the marital residence during the pendency of this cause. In the event [petitioner] fails to leave the marital residence in a clean, neat and proper condition, free of any waste, [respondent] may deduct the cost of repair or cleaning of the premises from [petitioner's] maintenance."

Seven months later, on July 30, 1991, petitioner filed a petition to vacate or modify the judgment. Petitioner alleged various conduct by respondent prior to the settlement agreement which caused her "financial, physical, mental and emotional distress." Petitioner further alleged that she received only 11% of the parties' marital estate, which she stated had a total value of $106,420, under the terms of the agreement. She alleged that her attorney advised her that, if she

refused to accept the agreement offered by respondent, she would probably receive no maintenance as her attorney believed that the judge would not award maintenance. She alleged that she "was under great duress to the point where she was visibly shaken and at times reduced to tears" and felt that she had no choice but to accept the proposed agreement.

Petitioner also alleged that the judgment did not include respondent's agreement to be responsible for one-half of her attorney fees. She alleged that respondent had made numerous purchases of expensive items since the judgment was entered and that respondent had withheld in excess of $18,000 in maintenance owed to her. She finally alleged:

"(40) That to induce the Petitioner to agree to the Respondent's terms and conditions of the oral marital settlement agreement, the Respondent represented to the Petitioner that there was a reduced chance that the Respondent would receive the 1990 annual bonus, if any, from his employer.

(41) That thereafter believing and relying on the Respondent's representation, the Petitioner succumbed to the terms and conditions set forth by the Respondent.

(42) That the aforementioned representation made by the Respondent to the Petitioner was false when so made.

(43) That after the entry of this Judgment, the Respondent was paid the 1990 annual bonus in the amount of $40,000.00 or approximately thirty-eight (38%) of the parties' total marital estate.

(44) That as a direct and proximate result of the Petitioner's reliance upon said representation, the Petitioner has loss [sic] her marital interest in said 1990 annual bonus."

Petitioner thus requested that the property settlement agreement be set aside and that judgment against respondent be entered in the amount of $18,322.88 for court ordered maintenance.

On August 13, 1991, respondent filed a motion to dismiss the petition. He argued that the allegations in the petition did not meet the requirements of section 2—1401 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401). He contended that the petitioner did not set forth a meritorious claim or defense but only claimed that she was entitled to a larger share of the marital estate than what she settled for. He also argued that she did not adequately allege due diligence in the original action or in filing the section 2—1401 petition.

On September 5, 1991, petitioner filed a motion for leave to file an amended petition. She attached an "amended petition to vacate or

modify judgment and rule to show cause" to the motion. Petitioner's amended petition included many of the same allegations contained in her original petition, but also included allegations that her only knowledge of the judgment came when her attorney read the judgment to her over the telephone, that her attorney did not advise her until the second or third week of January 1991 of her right to petition the court to vacate the judgment within 30 days, that her attorney thereafter failed or refused to return her telephone calls, and that an award of only 11% of the marital estate was insufficient and unconscionable.

Petitioner also sought a rule to show cause why respondent should not be held in contempt for his failure to pay maintenance. She attached to the petition letters from respondent dated February 15, 1991, March 15, 1991, April 15, 1991, and July 15, 1991. In each letter, respondent informed petitioner of the expenses he had incurred in making repairs to the marital residence or in replacing items allegedly taken from the marital residence by petitioner. The February letter concluded that he did not owe her $5,500 in maintenance as he spent $5,642. Interestingly, the letter stated that he paid $191.05 to carpet cleaners and then paid $4,084.60 to replace the carpet. The other letters also concluded that he did not owe petitioner any maintenance. Some of the more interesting expenses he claimed were $883.77 to replace his racing bicycle, $498 to replace two tennis rackets, $566.20 to replace an exercise bicycle, $213.95 to replace a world globe, and $2,498.94 to replace pots and pans, kitchen appliances and kitchen implements.

Respondent filed a motion to dismiss the amended petition. On September 25, 1991, an order was entered which stated that the court had reviewed the amended petition and had heard the arguments of counsel. The court granted respondent's motion to dismiss and denied petitioner's motion to file an amended petition. The court set the "enforcement aspect" of the petition for hearing. Petitioner filed her notice of appeal on October 23, 1991.

Parenthetically, we note that the record on appeal establishes that, after the filing of numerous documents and motions by both parties in the enforcement proceedings, an order was entered on January 22, 1992, which stated that the petition for a rule to show cause was dismissed "as maintenance has been paid." A hearing regarding sanctions was set for March 3, 1992.

On appeal, petitioner argues that the trial court should not have granted respondent's motion to dismiss her section 2—1401 petition. She apparently concedes that her original petition was not sufficient

to entitle her to relief under section 2—1401. She contends, however, that her petition does show that she could, if given the opportunity to do so, allege a section 2—1401 petition adequate to entitle her to relief based upon the unconscionability of the agreement, fraud, or the judgment's failure to include respondent's oral agreement to pay one-half of petitioner's attorney fees. She does not claim that her proposed amended petition was adequate and does not state the additional allegations she would make in another amended petition.

She argues that any inadequacies in the petition are a matter of form and not of substance and asserts that a "motion to dismiss a section 2—1401 petition should be granted only when it is clear that no facts can be pled upon which the circuit court could grant relief." She also contends that her petition should not have been dismissed, with prejudice, absent a finding by the court that she "could never state a section 2—1401 cause of action."

■ Section 2—1401 of the Code provides a comprehensive statutory procedure by which final orders and judgments may be vacated more than 30 days after their entry. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220.) The purpose of a section 2—1401 petition "is to bring before the court matters of fact which were unknown at the time the judgment was entered, and if known, would have affected or altered the judgment." (*In re Marriage of Hoppe* (1991), 220 Ill. App. 3d 271, 282.) To be entitled to relief under section 2—1401, a petitioner must affirmatively set forth specific allegations supporting: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting this claim or defense to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. (*Airoom*, 114 Ill. 2d at 220-21.) The requirement of due diligence, however, need not be rigidly enforced when fraud or unconscionable behavior is shown. *Tsuetaki v. Novicky* (1983), 158 Ill. App. 3d 505, 513.

■ When a party files a motion to dismiss attacking a petition for relief under section 2—1401, the motion admits all well-pleaded facts and challenges only the legal sufficiency of the petition. (*Hoppe*, 220 Ill. App. 3d at 283; see also *In re Adoption of Baby Girls Mandell* (1991), 213 Ill. App. 3d 670, 671.) The dismissal of a section 2—1401 (formerly section 72) petition will not be reversed on appeal absent an abuse of discretion. *People v. Alfano* (1981), 95 Ill. App. 3d 1026, 1030; see also *In re Marriage of Travlos* (1991), 218 Ill. App. 3d 1030, 1035-36.

■ Petitioner's argument that she must be given another opportunity to attempt to amend her petition must fail. She has misstated

the language from the case she relies on, *Uptown Federal Savings & Loan Association v. Kotsiopoulos* (1982), 105 Ill. App. 3d 444. The case actually states that a petition "should not be dismissed unless it clearly appears that no set of facts could be *proved* under the pleadings which would entitle the petitioner to relief." (Emphasis added.) (*Kotsiopoulos*, 105 Ill. App. 3d at 449.) Petitioner has also cited no relevant authority to support her contention that, before a section 2—1401 petition may be dismissed, a trial court must make a specific finding that a party could never state a section 2—1401 cause of action. In fact, a section 2—1401 petition may be dismissed if it fails to state sufficient facts to warrant relief. *In re Marriage of Travlos* (1991), 218 Ill. App. 3d 1030, 1035; *People v. Cole* (1991), 215 Ill. App. 3d 585, 587.

■ We will therefore address the sufficiency of the petition based upon the applicable standard. We initially note that the record does not contain a transcript of the hearing regarding respondent's motion to dismiss the section 2—1401 petition. There is therefore nothing of record to disclose the basis for the trial court's ruling. The court's order, however, did state that the court had reviewed petitioner's amended petition. The court apparently determined that neither petitioner's original petition nor the amended petition was adequate to entitle her to relief pursuant to section 2—1401. We conclude that the trial court did not abuse its discretion in making this determination and in dismissing the petition.

Petitioner has essentially conceded that the petition does not adequately allege facts showing due diligence on her part. While we recognize that this requirement may be relaxed upon a showing of fraud or unconscionable behavior, we conclude that the petition did not allege facts showing either fraud or unconscionable behavior. Petitioner relies on the allegations in both petitions that respondent told her that there was a "reduced chance" that he would receive a 1990 annual bonus, but then did in fact receive a $40,000 bonus. She asserts that this misrepresentation constituted fraud and that the property settlement was unconscionable based upon respondent's nondisclosed or misrepresented assets.

"Fraud is the intentional misrepresentation of a material fact or the concealment of a fact which induces a party to rely on that misrepresentation to his or her detriment." (*In re Marriage of Gurin* (1991), 212 Ill. App. 3d 806, 813.) We conclude that petitioner's allegation that respondent informed her that there was a "reduced chance" that he would receive a bonus which petitioner, according to her own pleadings, was aware that he received on an annual basis is not suffi-

cient to show fraud. Respondent's alleged statement to her could have been entirely true when made. The fact that he did later receive a bonus does not mean that there was not a reduced chance of a bonus at the time his statement was made.

We note that respondent clearly engaged in egregious behavior when he failed to pay petitioner the maintenance he had agreed to pay. However, that behavior was addressed in proceedings to enforce the judgment. Petitioner does not argue that respondent's outrageous violation of the judgment provides a basis for vacating the judgment.

We further conclude that petitioner failed to allege adequately that the settlement agreement was unconscionable. She alleged that she received only 11% of the marital assets which she valued at $106,420. However, the marriage was of short duration, the record demonstrates that respondent paid for her college education during the marriage, and the agreement also provided that she was to receive $28,000 in maintenance. We conclude that the terms of the agreement were not so unfair as to make the agreement unconscionable. See *In re Marriage of Carlson* (1989), 186 Ill. App. 3d 635, 639.

Finally, it is apparent that there is no merit to petitioner's contention that the judgment should be vacated because the judgment did not reflect respondent's oral agreement to pay one-half of her attorney fees. At the hearing regarding the settlement agreement, respondent clearly testified, in petitioner's presence, that each party would pay his or her own attorney fees. The written judgment, which petitioner alleged was read to her by her attorney, also stated that each party would be solely responsible for any and all fees and costs incurred in the litigation.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.